UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:18-cv-24397-UU

RICK GARCIA, individually and on
behalf of all others similarly situated,

    Plaintiff

v.

KENDALL LAKES AUTOMOTIVE, LLC
d/b/a KENDALL DODGE CHRYSLER
JEEP RAM,

    Defendant.

_____/

**DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS PLAINTIFF'S TCPA COMPLAINT
<u>WITH INCORPORATED MEMORANDUM OF LAW</u>**

Defendant Kendall Lakes Automotive, LLC ("KLA") respectfully moves to compel arbitration and to dismiss this action with prejudice under the Federal Arbitration Act, 9 **U.S.C.** § 1 *et seq.* ("FAA") and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, KLA moves to compel arbitration under the FAA and to stay this proceeding under Section 3 of the FAA until the arbitrator enters a final award.

    **I.   INTRODUCTION**

Plaintiff bought a new RAM pick-up truck from KLA. *See Hector Collado Declaration* at ¶¶ 3 & 4, attached and incorporated herein as Exhibit A. Among the papers Plaintiff signed, there are two documents pertinent to this motion: the first is a "Retail Buyer's Order" ("RBO") containing an arbitration provision and the second is a "Privacy Policy and Contact Consent." *Collado Dec.*, Ex. A., at ¶ 4, Attachments 1 & 2, respectively. The arbitration provision in the

RBO is governed by the FAA, and calls for arbitration on an individual basis and waives any right to arbitrate on behalf of a class. *Collado Dec.* Attachment 1, ¶ I.

Specifically, the arbitration provision calls for binding arbitration for any claim "arising out of or relating to this [Plaintiff's purchase of a new truck] or the parties' relationship. . . ." and specifically waives any right to arbitrate class actions. *Id.* The U.S. Supreme Court ruled in *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) that under the FAA "a party may not be compelled ... to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." So, Plaintiff's claims must be submitted to arbitration on an individual basis.

Additionally, in this lawsuit Plaintiff complains he received a single "unsolicited prerecorded message," from KLA which caused him "actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion" and that the message "inconvenienced" him and "caused disruption to his daily life." *See* DE 1, ¶ 48. On this basis he seeks to represent a putative nationwide class of purported similarly aggrieved persons on two separate Telephone Consumer Protection Act ("TCPA") claims. The Contact Consent Plaintiff signed, however, grants KLA "express permission" to contact Plaintiff by telephone "in connection with … goods and services that [KLA] could offer to [plaintiff] in the future" at the telephone number he freely provided to KLA. *Id.* at ¶ 4, Attachment 2. The issue of consent is an arbitrable issue.

## II. THE ARBITRATION AGREEMENT IS BROAD IN SCOPE

The RBO contains an "Arbitration Acknowledgement," which Plaintiff signed and that states: "The parties agree to submit all claims to binding arbitration as set forth in paragraph I below. By signing below, Customer expressly acknowledges that customer has read and

2

understands all terms of the arbitration provision as provided in paragraph I and agrees to be fully bound by the terms of the arbitration provision." *See Collado Dec.* Attachment 1, page 2 of 2. The eight-paragraph arbitration provision in paragraph I is Plaintiff's commitment to arbitrate and states:

> any controversy, claim, suit, demand, counterclaim, cross claim, or third party complaint, arising out of, or relating to this Order or the parties' relationship (whether statutory or otherwise and irrespective of whether Financing Approvals were obtained), including, but not limited to, any matter that may have induced the Customer to enter into a relationship with Dealer (collectively referred to as "Claim") and/or the validity and enforceability of this arbitration provision, shall be submitted to final and binding arbitration in the county and state where Dealer is situated.

See *Collado Dec*. at ¶ 4, Attachment 1, ¶ I. This broad language covers two important issues to consider in resolving this motion.

First, the plain language of the provision evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the purchase and relationship. In determining the *scope* of the arbitration clause, the Court looks at the parties' intent to submit the dispute to arbitration, starting at the language of the arbitration provision, and construing any doubt in favor of arbitrability in accordance with the strong federal policy favoring arbitration. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

Plaintiff cannot deny he signed both the arbitration agreement and the telephone Contact Consent. *See Collado Dec*. at ¶ 3 & 4, Attachments 1 & 2. Plaintiff also cannot deny the plain language of the Arbitration Agreement reflects the parties' intent to arbitrate all disputes relating to the parties relationship, the very choice of words they used. The arbitration provision calls for binding arbitration for any claim "***arising out of or relating to*** this [Retail Buyer's] Order or ***the***

3

*parties' relationship*…." *See Collado Dec.,* Attachment 1, ¶ I; (emphasis supplied). Under Florida law, "the plain meaning of the actual language used by the parties [in a contract] controls." *Pol v. Pol*, 705 So. 2d 51, 53 (Fla. 3d DCA 1997). The RBO plainly calls for arbitration of all disputes.

Likewise, Plaintiff cannot deny the plain language of the Contact Consent. In fact, just to the immediate right of where Plaintiff initialed the consent, it says: "You also grant to us and our agents your express permission to contact you by telephone, email or other reasonable means, at the telephone number and e-mail address listed above, on the retail sales/lease order . . . in connection issues involving your vehicle, as well as the availability of other goods and services that we could offer you in the future." *See Collado Dec.,* Attachment 2, ¶ 4). The voicemail message Plaintiff alleges KLA sent him [DE 1 ¶ 40] conveyed information about goods and services KLA could offer him. The voice mail was sent to a telephone number Plaintiff provided to KLA. *Collado Dec.* Attachments 1 & 2. The voicemail he received is one he expressly consented to receive, and arose solely because of his relationship with KLA. The voice mail is a subject, therefore, that falls squarely within the arbitration provision. "Claims are subject to arbitration where they fall within the *scope* of a valid and enforceable arbitration agreement." *McDougal v. Comcast Corp.*, No. 16-81906-CIV, 2017 WL 3726040, at *4 (S.D. Fla. Feb. 24, 2017) (internal quotations and citations omitted); (emphasis supplied). So, all doubts concerning the scope of the agreement to arbitrate should be resolve in favor of arbitration. See *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 583 (1960).

Second, the Court should compel arbitration because the making of the agreement to arbitrate is not an issue here. As such, the delegation language in the arbitration provision evidences the parties' agreement that threshold issues concerning the agreement to arbitrate and

4

arbitrability are decided by the arbitrator. *See Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement."). As the Supreme Court explained in *Prima Paint v. Floyd & Conklin Mfg., Inc.*, 388 U.S. 395, 404 (1967), "a court may consider only issues relating to the making and performance of the agreement to arbitrate." In this regard, Section 4 of the FAA *requires* a court to order the parties to arbitrate "upon being satisfied that the making of the agreement to arbitrate … is not in issue." *Id.* The making of the agreement is not an issue here. Consequently, if there's a fight over the *validity and enforceability* of the arbitration provision – the arbitrator decides that threshold issue as plainly stated in the arbitration provision.

### III. THE APPLICABLE LEGAL STANDARD AND ARGUMENT

#### A. The Federal Arbitration Act Applies to statutory disputes.

There is no reason a *statutory* claim, like the TCPA claims here, cannot be arbitrated. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the *statutory claims* at issue."); (emphasis supplied); *accord Mackler v. Fitness Int'l, LLC*, No. 16-80150-CIV, 2016 WL 7756623, at *2 (S.D. Fla. Apr. 22, 2016) citing *Green Tree* with approval. If Plaintiff seeks to avoid arbitration of his statutory claims he will be unable to carry his burden. For one thing, he agreed to arbitration. For another thing, nothing in the TCPA evinces an intention to foreclose arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("Although all statutory claims may not be appropriate for arbitration, having made the bargain

5

to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.") (citation omitted).

### B. This Court should compel arbitration of each claim.

The Agreement Plaintiff signed specifically invokes the FAA. Plaintiff however ignored the requirement to arbitrate his TCPA claims and he must now be compelled to arbitrate. Section 4 of the FAA permits a court to compel arbitration when one party – as in the instant case – has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4; *see also McDougal v. Comcast Corp.*, No. 16-81906-CIV, 2017 WL 3726040, at *2 (S.D. Fla. Feb. 24, 2017). In determining whether to compel arbitration, the Court considers three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018). Each of these three factors is satisfied here and Plaintiff must be compelled to arbitrate his claims.

#### 1. A valid, signed written arbitration agreement exists.

As a threshold issue, the delegation provision in the agreement to arbitrate, which Plaintiff signed, sends the question of the validity and enforceability of the RBO along with any gateway issues to the arbitrator. *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443–44, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); (a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court); *Prima Paint*, 388 U.S. at 404. If Plaintiff questions the validity of the RBO, this Court's analysis ends and the validity question goes to the arbitrator.

Nevertheless, should the Court's analysis of the validity of the agreement to arbitrate in the Retail Buyer's Order continue, under the FAA a written provision to arbitrate is "valid,

6

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (West). The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract'." *Greenberg v. Doctors Assocs., Inc.*, No. 1:18-CV-22505-UU, 2018 WL 4927910, at *1 (S.D. Fla. Aug. 29, 2018)(internal citations omitted).

Plaintiff selected, financed and took delivery of a new RAM 1500 pick-up truck, from KLA. To take delivery of the truck he purchased, Plaintiff signed transaction documents with KLA including an agreement (the RBO) containing an arbitration provision and the Contact Consent. A valid agreement to arbitrate is formed where there is mutual assent to certain and definite contractual terms, such as the RBO purchase agreement Plaintiff here signed. *Greenberg*, 2018 WL 4927910, at *2. A person who signs a contract, is generally bound it. *Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 100 (Fla. Dist. Ct. App. 2017), *reh'g denied* (Mar. 30, 2017), *review denied*, No. SC17-792, 2017 WL 4161247 (Fla. Sept. 20, 2017). Plaintiff cannot dispute he bought and took delivery of the pick-up truck and thereby assented to the terms of the RBO, including the agreement to arbitrate. There is a valid agreement to arbitrate so the first *Hilton* factor used in determining whether to compel arbitration is met.

**2. Each of Plaintiff's TCPA claims raises an arbitrable issue**.

The agreement to arbitrate specifically calls for arbitration of "Claims" arising from or relating to the parties' relationship. The Contact Consent Plaintiff signed permits KLA to contact Plaintiff at the telephone numbers and email he provided to KLA. *See Collado Dec*. at ¶ 4, Attachment 2, ¶ 4). The matter of consent regarding Plaintiff's receipt of a ring-less voicemail from KLA arises out of or relates to Plaintiff's relationship with KLA. The FAA with its liberal

7

federal policy favoring arbitration agreements permits private parties to and protects the right to forego judicial process by contracting to arbitrate, which Plaintiff did here.

Plaintiff expressly agreed the FAA governs the enforceability of the Arbitration Agreement. *See Collado Dec*. at ¶ 4, Attachment 1, ¶ I. If Plaintiff resists arbitration, he has the "burden of proving that the claims at issue are *unsuitable* for arbitration." *Mackler*, 2016 WL 7756623, at *2 (internal citation and quotation omitted); (emphasis added)). That unsuitability has to be real, not merely a speculative contention and cannot undercut the FAA. *Id.* When in doubt, questions of arbitrability are resolved in favor of arbitration. As the Supreme Court made clear long-ago the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). Here an arbitrable issue exists regarding the parties relationship and the ring-less voice mail, which he consented to receive, thus, the second *Hilton* factor is met.

### 3. KLA has not waived the right to arbitrate Plaintiff's claims.

Plaintiff filed his lawsuit on October 23, 2018 and served it two days later. KLA has not filed any paper or taken an inconsistent position on the right under the FAA to require Plaintiff to arbitrate and is moving promptly, within 21 days of service of the complaint, to compel arbitration. Whether there is a "[w]aiver of the right [to arbitrate] does not necessarily depend on the timing of the motion to compel arbitration, but rather on the prior taking of an inconsistent position by the party moving therefor." *Miller & Solomon Gen. Contractors, Inc. v. Brennan's Glass Co.*, 824 So. 2d 288, 290 (Fla. 4th DCA 2002)(internal citation omitted). Moreover, "all questions about waivers [of arbitration] should be construed in favor of arbitration rather than

against it." *Id.* KLA has not engaged in any conduct inconsistent with the right to compel arbitration and, therefore, has not waived the right. The third *Hilton* factor, therefore, is met.

### IV. THE CASE SHOULD BE DISMISSED, NOT STAYED

There are only two claims alleged in Plaintiff's complaint both of which are brought under the TCPA, consequently, both must be submitted to arbitration. The FAA provides, in pertinent part, that a court compelling arbitration "*shall* on application of one of the parties[,] *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Cusolito v. Citibank, N.A.*, No. 0:17-CV-60963-WPD, 2017 WL 8890662, at *3 (S.D. Fla. Oct. 6, 2017) quoting 9 U.S.C. § 3 (emphasis added). Despite this statutory language, a Court in this District made clear last year that "**[t]he weight of authority clearly supports *dismissal* of the case when *all* of the issues raised in the district court must be submitted to arbitration.**" *Cusilito* at *3 (internal citations omitted; emphasis added). So, the two TCPA claims raised in this Court must go to arbitration. That having been said, ultimately, "district courts are vested with discretion to determine whether stay or dismissal is appropriate." *Cusilito* at *3 quoting *Swartz v. Westminister Servs., Inc.*, No. 810-CV-1722-T-30AEP, 2010 WL 3522141, at *2 (M.D. Fla. Sept. 8, 2010). This Court should exercise its discretion to compel arbitration and dismiss this case.

### V. CONCLUSION

For the foregoing reasons, this case must be compelled to arbitration and dismissed.

9

Respectfully submitted:

/s/Haas Hatic                          .
HAAS HATIC
Florida Bar No. 843989
Email: haas.hatic@gmlaw.com
Secondary: maria.salgado@gmlaw.com
EVAN KLINEK
Florida Bar No. 134820
Email: evan.klinek@gmlaw.com
Secondary: rene.vazquez@gmlaw.com
GREENSPOON, MARDER LLP
200 E. Broward Blvd.
PNC Center, Suite 1800
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6956 (Facsimile)
*Attorneys for Kendall Lakes Automotive, LLC*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on November 14th 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    s/ Haas Hatic                               
HAAS HATIC

36959004v4 29636:0017

## SERVICE LIST

*Rick Garcia, Plaintiff v. Kendall Lakes Automotive, LLC, Defendant*
**Case No.: 1:18-cv-24397-UU**
U.S. District Court Southern District of Florida

Andrew J. Shamis
Florida Bar # 101754
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@shamisgentile.com

Scott Edelsberg, Esq.
Florida Bar No. 0100537
**EDELSBERG LAW, PA**
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com
*Attorneys for Plaintiff Rick Garcia*

*By ECMF*

36959004v4 29636:0017