UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-24397-CIV-O'SULLIVAN

[CONSENT]

RICK GARCIA,

    Plaintiff,

v.

KENDALL LAKES AUTOMOTIVE, LLC,

    Defendant.
_____/

## ORDER

THIS MATTER is before the Court on the Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff's TCPA Complaint (DE# 8, 11/14/18). This matter was referred to the undersigned for final resolution by the Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida. Having carefully considered the filings and the applicable law, the undersigned rules that the Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff's TCPA Complaint (DE# 8, 11/14/18) is **GRANTED** in accordance with the following Order.

## I. BACKGROUND

The plaintiff bought a vehicle from the defendant on or about March 4, 2017. The plaintiff signed various documents, including a "Retail Buyers Order" ("RBO") containing an arbitration provision, and a "Privacy Policy and Contact Consent". The arbitration provision in the RBO is governed by the Federal Arbitration Act (FAA). The arbitration provision further indicates arbitration shall be on an individual basis and

waives the right to arbitrate for a class.  The plaintiff filed an action against the defendant alleging that the defendant violated the Telephone Consumer Protection Act ("TCPA") with one prerecorded telephone message that was unsolicited.  The defendant filed the Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff's TCPA Complaint (DE# 8, 11/14/18) on November 14, 2018.  The plaintiff filed a response on November 28, 2018 (DE # 11, 11/28/18), the defendant filed a reply on December 5, 2018, (DE # 14, 12/5/18), and the plaintiff submitted a sur-reply on December 8, 2018, (DE # 15-1, 12/8/19).

The defendant seeks to compel the plaintiff to arbitrate his claims against the defendant pursuant to the arbitration provision in the RBO.  The RBO arbitration provision provides for arbitration for claims "arising out of or relating to this Order or the parties relationship...".  The provision also specifically waives the right to arbitrate class actions.  The Supreme Court has held that under the FAA, "a party may not be compelled ... to submit to class arbitration unless there is a contractual basis for concluding the party *agreed* to do so."  Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., 559 U.S. 662, 684, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (emphasis in original).  The defendant argues that in this matter, the defendant did not agree to class arbitration, so the plaintiff's claims must be arbitrated on an individual basis.

Moreover, because the plaintiff asserts that the one unsolicited message from the defendant caused the plaintiff harm, invaded his privacy, aggravated him, intruded on his seclusion, was trespass and conversion, caused the plaintiff inconvenience, and disrupted the plaintiff's daily life, the plaintiff seeks to represent a nationwide class regarding two TCPA claims.  The defendant maintains that the Contact Consent signed

2

by the plaintiff expressly gave the defendant permission to contact the plaintiff, via telephone, at the phone number provided by the plaintiff with respect to the future offer of goods and services. The defendant asserts that the issue of consent is an arbitrable issue and that the arbitration provision is one of broad scope.

In his response, the plaintiff asserts that the arbitration provision only relates to claims related to the purchase of his vehicle, not independent TCPA claims like the claim at issue in this matter. The plaintiff further argues that reading the arbitration agreement to include the TCPA claims brought by the plaintiff unconscionably expands the arbitration agreement to an unlimited scope. In the reply the defendant notes that the relationship between the parties is ongoing, as the plaintiff continued to interact with the defendant after the purchase of the vehicle, and that the plaintiff consented to arbitrate claims "arising out of, or relating to" "the parties' relationship (whether statutory or otherwise)". (DE 8-2, para. 1).

## II. STANDARD OF REVIEW

Arbitration agreements are governed by and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et. seq. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 23-24 (1991). The FAA and the strong federal policy favoring arbitration, require courts to "rigorously enforce agreements to arbitrate." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. See, Shriever v. Navient Solutions, Inc., 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014). Accordingly, in ruling on a motion to compel arbitration, the Court may consider matters outside of the four corners of the complaint.

Mamani v. Sanchez Berzain, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009).

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2009) (citing Perry v. Thomas, 482 U.S. 483 (1987)). "Federal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." Id. (citing Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004) (explaining that "it is the role of courts to 'rigorously enforce agreements to arbitrate'" and to construe any doubt in favor of arbitrability). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Mercury Construction, 460 U.S. at 24-25 (footnote omitted).

"[U]nder the FAA, no party can be compelled to arbitrate unless that party has entered into an agreement to do so." Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted); see Seaboard Coastline R.R. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir. 1982) (The federal policy favoring arbitration "cannot stretch a contract beyond the scope originally intended by the parties.").

> [W]hen determining whether an arbitration agreement exists, 'courts generally ... should apply ordinary state-law principles that govern the formation of contracts.' ... ('[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that

4

governs the formation of contracts.')

Dasher v. RBC Bank (USA), 745 F.3d 1111, 1116 (11th Cir. 2014) (citations omitted).

A district court must consider three factors on a motion to compel arbitration: "(1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." Pierre-Louis v. CC Solutions, LLC, No. 17-60781, 2017 WL 4841428, at *2 (S.D. Fla. Oct. 26, 2017)(citing Nat'l Auto Lenders, Inc. V. Syslocate, Inc., 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010)).

### III.  ANALYSIS

#### A. Contractual Nexus or Relationship Exists Between the RBO and TCPA Claim

The defendant moves to compel arbitration and argues that the TCPA claims raised in the Complaint are arbitrable.  The defendant relies on the broad arbitration provision contained in the RBO. The defendant argues that there is no reason a statutory claim, such as the TCPA, cannot be arbitrated.  See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims as issue.").  The defendant asserts that the plaintiff is unable to carry his burden when seeking to avoid arbitrating his statutory claims.  See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory right at issue.'") (citation omitted).

The plaintiff argues that no issue exists that the parties may arbitrate due to a

5

lack of relationship between the plaintiff's automobile purchase and the TCPA claims. The plaintiff asserts that "[w]hether or not an arbitrable issue exists ... 'requires consideration of the relationship between the contract and the contract claim at issue.'" Olson v. Fla. Living Options, Inc., 210 So.3d 107, 111 (Fla. 2d DCA 2016) (quoting Kaplan v. Kimball Hill Homes Fla., Inc., 915 So.2d 755, 759 (Fla.2d DCA 2005)). The plaintiff asserts that an arbitrable claim exists where there is a "significant relationship" or a "contractual nexus" between the claims in the complaint and the contract between the parties that contains the arbitration agreement. Jackson v. Shakespeare Found, Inc., 108 So.3d 587, 593 (Fla. 2013); see also Betancourt v. Green Tree Servicing, LLC, No. 8:13-cv-2759-T-30-AEP, 2013 WL 6644560, at *3 (M.D. Fla. Dec. 17, 2013) ("'even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause.'") (citing Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Group, LLC, 124 So.3d 968 (Fla. 3d DCA 2013)).

The plaintiff further asserts that "[a] 'significant relationship' between a claim and an arbitration provision does not necessarily exist merely because the parties in the dispute have a contractual relationship." Leidel v. Coinbase, Inc., 729 Fed.Appx. 883, 887 (11th Cir. 2018) (quoting Jackson, 108 So.2d at 593) (citing Seifert v. U.S. Home Corp., 750 So.2d 633, 637-38 (Fla. 1999) ("[T]he mere fact that the dispute would not have arisen but for the existence of the contract and the consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement.")).

6

The undersigned notes that when a Court is faced with "deciding whether a claim falls within the scope of an arbitration agreement, courts focus on factual allegations in the complaint rather than the legal causes of action asserted." Smith v. Beverly Hills Club Apartments, LLC, 15cv23450-KMM, 2016 WL 344975, at *8 (S.D. Fla. Jan. 28, 2016). There are allegations in the complaint regarding the parties' relationship. Moreover, there is a significant relationship between a claim and a contract "if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." Leidel v. Coinbase, Inc., 729 F. App'x 883, 887 (11th Cir. 2018). "Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract." Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060, 1067 (11th Cir. 2004). Such is the case in this matter: the RBO containing an arbitration provision, and a "Privacy Policy and Contact Consent" were signed at the same time.

Moreover, the language of the arbitration provision contained in the RBO is broad, and requires arbitration regarding the consent issue. The arbitration provision at issue in this matter contains the words "relating to", not just "arising from" or "arising out of".

> In analyzing the scope of an arbitration clause, Florida courts draw a distinction between clauses that require arbitration of claims "arising out of" the subject contract and those that require arbitration of claims "arising out of *or relating to*" the contract. See Jackson v. Shakespeare Found., Inc., 108 So.3d 587, 593 (Fla. 2013) (emphasis in original). The former are considered to be "narrow in scope" and apply only to "those claims that have a direct

> relationship to a contract's terms and provisions." Id. The
> latter are considered to be "broad in scope" and apply to
> "claims that are described as having a 'significant
> relationship' to the contract—regardless of whether the claim
> is founded in tort or contract law." Id. (quoting Seifert v. U.S.
> Home Corp., 750 So.2d 633, 637–38 (Fla. 1999) ).

Leidel at 887. The RBO arbitration provision in this matter provides for arbitration for claims "arising out of or relating to this Order or the parties relationship (whether statutory or otherwise...". Accordingly, the subject arbitration provision is broad in scope thereby requiring arbitration regarding the consent issue, as further discussed below.

        B. The Plaintiff's Claims are Within the Scope of the Arbitration Agreement

The plaintiff asserts that even if an arbitrable issue exists in this case, the plaintiff's claims do not fall within the arbitration provision because the TCPA claim is not connected to the plaintiff's vehicle purchase. The plaintiff argues that the TCPA claim involves behavior by the defendant that was not contemplated by the RBO, and binding all future claims to the RBO because of an agreement between the parties is inappropriate. In support of his position, the plaintiff relies on Gamble v. New Eng. Auto Fin., Inc., 735 F. App'x. 664 (11th Cir. 2018), a case the plaintiff argues is almost identical to this case. In Gamble, the parties entered into a loan agreement "requiring arbitration of any 'claim, dispute or controversy ... whether preexisting, present or future, that in any way arises from or relates to this Agreement or the Motor Vehicle securing this Agreement.'" Gamble v. New England Auto Fin., Inc., 735 F. App'x 664, 665 (11th Cir. 2018).

The defendant in Gamble moved to compel arbitration of the plaintiff's TCPA

claim. The Eleventh Circuit noted that

> The plain language of the Arbitration Provision requires that the dispute "arise[ ] from or relate[ ] to this Agreement or the Motor Vehicle securing this Agreement." Although this language makes the arbitration provision broad, it does not make it limitless. *See Princess Cruise Lines*, 657 F.3d at 1218 (stating "the term 'arising out of' is broad, but not all encompassing" while recognizing that the dispute in question must be "an immediate, foreseeable result of the performance of contractual duties"). Here, Ms. Gamble signed an agreement whereby NEAF promised to provide her with the necessary funds to purchase an automobile on a particular date, in exchange for her promise to pay NEAF back—with interest—by a later date. The Arbitration Provision only applies to disputes arising out of, or related to, this agreement.

Gamble v. New England Auto Fin., Inc., 735 F. App'x 664, 666 (11th Cir. 2018). The Gamble Court further opined that "Ms. Gamble's TCPA claim, on the other hand, arises not from the Loan Agreement or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law." Id. According to the plaintiff, the plaintiff's claim in this matter arises from the same separate, distinct federal law that is unrelated to the RBO.

The defendant notes that consent falls within the agreement between the parties to arbitrate and that the Gamble case is distinguishable from this matter. According to the defendant, "*Gamble* has marked factual differences not the least of which is the scope language of the arbitration agreement, which explain the outcome and highlight why *Gamble* is inapposite here." (Reply (DE # 14, 12/5/19) at p. 8). The undersigned agrees. As outlined by the defendant

> The facts in the instant case are straight forward: Plaintiff bought a truck from KLA and signed the RBO, the

arbitration acknowledgment, the telephone Contact Consent, and other transaction documents. The agreement to arbitrate survives the termination, payoff, or transfer of the contract. Plaintiff agreed to arbitrate claims arising from, or relating to, the parties' "relationship." The Consent Plaintiff signed gave "express permission" for KLA to call Plaintiff about goods and services KLA could offer in the future. Plaintiff took possession of the truck, and left the dealership. Over the next 18 plus months he took the truck in for service, made inquiries of and had at least one chat conversation with KLA about other goods and services was asked for his telephone number and gave it. Plaintiff also sent KLA lead email requests to schedule service appointments, and in each instance freely provided KLA his telephone number(the number that is the subject of his claim). Plaintiff alleges he received one voicemail offering him money for his truck, which gives rise to his claims [DE 1 ¶ 40], approximately two months after his last scheduled service visit. *See* Ex. A, Collado Dec.

In stark contrast, in *Gamble* plaintiff signed an auto loan and agreed to arbitrate any "claim, dispute or controversy ... whether preexisting, present or future, that in any way arises from or relates to this Agreement or the Motor Vehicle securing this Agreement", but she *did not sign* the text consent provision granting the lender the right to send customers "e-mails, text messages and other electronic communications." *Gamble*, 735 F. App'x at 665. When Gamble paid off her car loan she started to get text messages from the lender. She told the lender she didn't want to receive texts, but she received at least nine additional texts before filing suit. *Id.* The district court denied the lender's motion to compel arbitration. On appeal, the Eleventh Circuit affirmed. All the Eleventh Circuit said in *Gamble* is that the TCPA claims were not subject to the arbitration because the provision only covered disputes arising from or related to the loan "Agreement" or the "collateral." The Court found the text consent was a separate standalone provision, but found Gamble never signed it, and thus no agreement regarding text messages existed between the parties.

Unlike *Gamble*, here Plaintiff signed the Consent and the arbitration provision as part of one transaction so these documents are construed as one contract, which expressly includes arbitrating claims arising from the parties' statutory relationship meaning there was an agreement regarding the

> telephone consent. As Plaintiff knows, "it is the language of the contract that defines the scope of disputes subject to arbitration." *Gamble*, 735 F. App'x at 665. In *Gamble* there was no agreement to receive text messages at all; no agreement to arbitrate statutory claims; here, in contrast Plaintiff consented to being contacted by phone, including about goods and services KLA could offer and agreed to arbitrate statutory claims.

(Reply (DE # 14, 12/5/19) at pp. 8-9).

The undersigned agrees with the defendant that the facts in Gamble differ from the facts in this matter. Here, the plaintiff consented to phone contact from the defendant, including contact regarding goods and services the defendant could offer the plaintiff, and the plaintiff agreed to arbitrate statutory claims that arose between the parties. This differs from Gamble, in which the plaintiff did not sign the text consent provision granting the lender the right to send customers "e-mails, text messages and other electronic communications." *Gamble*, 735 F. App'x at 665. Accordingly, the undersigned finds that plaintiff's TCPA claims fall within the arbitration clause contained in the RBO.

C. Conscionable Arbitration Clause

Citing to In re Jiffy Lube Int'l, Inc., 847 F.Supp.2d 1253, 1262-63 (S.D. Cal. 2012), the plaintiff asserts that the defendant "attempts to argue a position the Southern District of California essentially described as indefensible – that an arbitration agreement was so expansive that it had no limiting principle." (Response (DE # 11, 11/28/19) at p. 9). In In re Jiffy Lube Int'l, Inc., the Court opined that an arbitration clause that covered any and all disputes is unconscionable. Id, at 1263. The plaintiff's argument fails for two (2) reasons. First, the arbitration clause at issue in this matter

does not refer to "any and all disputes", it says "arising out of, or relating to".

Second, in order to find the arbitration clause in this matter unconscionable, the plaintiff is required "to establish *both* procedural and substantive unconscionability." Mackler v. Fitness Int'l, LLC, No. 16-80150-CIV, 2016 WL 7756623, at *3 (S.D. Fla. Apr. 22, 2016). The plaintiff has failed to even attempt to establish both procedural and substantive unconscionability.

### D. The Defendant Has Not Waived its Right to Arbitrate the Plaintiff's Claims

The plaintiff filed his lawsuit on the TCPA claims on October 23, 2018, and served it shortly thereafter. The defendant did not file anything in this lawsuit with a position inconsistent with the assertion that arbitration is proper in this matter. Moreover, the defendant promptly moved, within 21 days of being served with the Complaint, to compel arbitration in this matter. The waiver of the right to arbitrate a case "does not necessarily depend on the timing of the motion to compel arbitration, but rather on the prior taking of an inconsistent position by the party moving therefor." Miller & Solomon Gen. Contractors, Inc. v. Brennan's Glass Co., 824 So.2d 288, 290 (Fla. 4th DCA 2002) (internal citations omitted). Additionally, questions regarding the waiver of arbitration "should be construed in favor of arbitration rather than against it." Id. In this matter, the defendant has done nothing contrary to its right to compel arbitration, and has not waived the right to compel arbitration.

### E. Dismissal/Stay

The Eleventh Circuit has held that "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration" when all of the claims are subject to mandatory arbitration. Lambert v. Austin Indus., 544 F.3d 1192, 1195 (11th Cir. 2008).

The Eleventh Circuit has also affirmed dismissal on those grounds. See Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367 (N.D. Ga. 2004), aff'd, 428 F.3d 1359 (11th Cir. 2005). The defendants seek dismissal in the event the Court grants their motion to compel the plaintiff to arbitrate.

> The FAA provides, in pertinent part, that a court compelling arbitration '*shall* on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement.' 9 U.S.C. § 3 (emphasis added). Despite this statutory language, '[t]he weight of authority clearly supports *dismissal* of the case when *all* of the issues raised in the district court must be submitted to arbitration.' *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ) (emphasis added). Ultimately, 'district courts are vested with discretion to determine whether stay or dismissal is appropriate.' *Swartz v. Westminister Servs., Inc.*, No. 810-CV-1722-T-30AEP, 2010 WL 3522141, at *2 (M.D. Fla. Sept. 8, 2010).

Cusolito v. Citibank, N.A., 2017 WL 8890662, at *3 (S.D. Fla. 2017). In this matter, both TCPA claims in the plaintiff's complaint are subject to arbitration. Accordingly, the undersigned finds that dismissal of this action is appropriate.

## IV. CONCLUSION

The undersigned finds that the arbitration provision in the RBO is a broad arbitration clause, and covers the issues raised by the plaintiff in the Complaint, because the RBO arbitration provision provides for arbitration for claims "arising out of or relating to" the RBO "or the parties relationship...". As indicated in Jackson v. Shakespeare Found., Inc., 108 So. 3d at 590, the words "relating to" broadens the scope of an arbitration provision to include those claims that are described as having a

13

"significant relationship" to the contract—regardless of whether the claim is founded in tort or contract law.

## V. RULING

Based on the foregoing, the Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff's TCPA Complaint (DE# 8, 11/14/18) is **GRANTED**, this matter is DISMISSED, and the Clerk of Court is directed to mark this case CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida this 26th day of March, 2019.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE